**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TONYETTE O.,[1]

   Plaintiff,

  v.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

   Defendant.

Case No. 2:24-cv-00333-AJR

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

   Tonyette O. ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB").  (Dkt. 12 at 5.)  For the

---

 [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

 [2]  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Frank Bisignano has been substituted in as the Defendant in this action.

reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on March 22, 2019, alleging disability commencing in August 2008.  (Dkt. 6-4 at 17; Dkt. 6-6 at 2-5.)  Plaintiff's date last insured for benefits was December 31, 2013.  (Dkt. 6-5 at 2.)  The Commissioner denied the claims by initial determination on May 6, 2019, (Dkt. 6-4 at 9), and upon reconsideration on July 20, 2019.  (Id. at 17.)  Plaintiff filed a written request for a hearing in October of 2019.  (Dkt. 6-5 at 19.)  On October 5, 2022, Administrative Law Judge Robin Rosenbluth (the "ALJ") conducted a hearing[3] and subsequently published an unfavorable decision on December 21, 2022.  (Dkt. 6-3 at 37-76; id. at 23-33.)  Plaintiff requested review of the ALJ's decision by the Appeals Council on February 13, 2023.  (Dkt. 6-5 at 100-02.)  The Appeals Council denied Plaintiff's request for review on November 14, 2023.  (Dkt. 6-3 at 2-4.)  On that date, the ALJ's decision became the final decision of the Commissioner.  See 42 U.S.C. § 405(h).  Plaintiff now seeks review of the ALJ's final decision.

## III.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months.  See Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment

---

[3] The hearing was conducted telephonically and Plaintiff was represented by an attorney at the hearing.  (Dkt. 6-3 at 39-40.)

must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  See 20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)    Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)    Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)    Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five.  See Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  See id. at 954.  If, at step four, the claimant meets their burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1),

1  416.920(g)(1).  The Commissioner may do so by the testimony of a vocational

2  expert ("VE") or by reference to the Medical-Vocational Guidelines appearing in 20

3  C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

4  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has

5  both exertional (strength-related) and non-exertional limitations, the Grids are

6  inapplicable and the ALJ must take the testimony of a VE.  See Moore v. Apfel, 216

7  F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th

8  Cir. 1988)).

9

10                                    **IV.**

11                          **THE ALJ'S DECISION**

12          The ALJ employed the five-step sequential evaluation process and concluded

13  that Plaintiff was not disabled within the meaning of the Social Security Act through

14  Plaintiff's date last insured.  (Dkt. 6-3 at 23-33.)  At step one, the ALJ found that

15  Plaintiff had not engaged in substantial gainful activity from her alleged onset date

16  of August 1, 2008 through her date last insured of December 31, 2013.  (Id. at 26.)

17  At step two, the ALJ found that, through the date last insured, Plaintiff had the

18  following severe impairments: degenerative disc disease of the lumbar spine and

19  obesity.  (Id.)  At step three, the ALJ determined that, through the date last insured,

20  Plaintiff did not have an impairment or combination of impairments that met or

21  medically equaled the severity of any of the listings in the regulations.  (Id.)

22          The ALJ assessed Plaintiff's RFC through the date last insured and concluded

23  that she could perform "light work as defined in 20 CFR 404.1567(b) except

24  [Plaintiff] can stand and/or walk 6 hours in an 8 hour workday; sit 6 hours in an 8

25  hour workday; never climb ladder/rope/scaffolds; only frequently perform other

26  postural activity; and can never work around unprotected heights, dangerous

27  machinery, or similar workplace hazards."  (Id. at 28 (bold omitted).)  The ALJ

28  found that Plaintiff's "medically determinable impairments could reasonably be

4

expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained" in the ALJ's decision.  (Id. at 29.)

At step four, the ALJ found that Plaintiff could perform her past relevant work of as an office manager.  (Id. at 33 (bold omitted ).)  Accordingly, the ALJ found that Plaintiff had not been under a disability as defined by the Act from August 1, 2008, the alleged onset date, through December 31, 2013, the date last insured.  (Id. at 33.)

## V.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  See Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To determine whether substantial evidence supports a finding, the court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion."  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can

reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  See Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

# VI.
## DISCUSSION

Plaintiff raises four issues for review: (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ's decision was supported by substantial evidence in light of new and material evidence submitted to the Appeals Council; (3) whether the ALJ properly evaluated Plaintiff's subjective symptom testimony; and (4) whether the ALJ erred in formulating the RFC.  (Dkt. 12 at 13.)  For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## A.      The Court Finds No Basis For Remand In The ALJ's Evaluation Of The Medical Opinion Evidence.

In her first ground for relief, Plaintiff contends that the ALJ erred in the evaluation of the medical opinion evidence.  (Dkt. 12 at 14.)  Specifically, Plaintiff argues that the ALJ failed to properly evaluate the opinions of chiropractors Spunt and Manfre using the standards applicable to medical opinion evidence.  (Id. at 14-15.)  Further, Plaintiff argues that the ALJ erred in evaluating a 2019 letter from Plaintiff's rheumatologist Dr. Singh, and erred in evaluating the opinion of medical advisor Dr. Nickerson Geneve.  (Id. at 17-18.)

### 1.      Legal Standard.

"When determining whether a claimant is eligible for benefits, an ALJ need not take every medical opinion at face value."  Cross v. O'Malley, 89 F.4th 1211, 1213 (9th Cir. 2024) (internal quotation marks omitted).  Instead, "the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion."  Id.  For applications filed on or after March 27,

2017, the ALJ will not "defer or give any specific evidentiary weight to any medical opinions," but instead "must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: **supportability** and **consistency**." Id. (internal quotation marks omitted, emphasis added).

An ALJ cannot reject a medical source's opinion without providing an explanation supported by substantial evidence. See Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." Id. at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." Id. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ's articulation of persuasiveness must show the grounds actually relied upon for the final decision. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

2.  **The ALJ Was Not Required To Evaluate The Opinions of Chiropractors Spunt And Manfre Under The Standard Applicable To Medical Opinion Evidence.**

Plaintiff argues that the ALJ failed to properly evaluate the opinions of chiropractors Spunt and Manfre using the supportability and consistency standards in 20 C.F.R. § 404.1520c for the evaluation of medical opinion evidence, and failed to discuss these factors in rejecting the chiropractors' opinions. (Dkt. 12 at 14-15.) Plaintiff argues that the ALJ failed to acknowledge the consistency between the opinion of Chiropractor Manfre and the opinion of Chiropractor Spunt. (Id.) Further, Plaintiff argues that the ALJ failed to discuss the consistency of these providers' opinions with the overall record. (Id. at 15-16.) Finally, Plaintiff contends that the ALJ failed to discuss the consistency between the opinions of Spunt and Manfre with Plaintiff's testimony at the hearing. (Id. at 16.)

Under the applicable regulations, only licensed physicians and certain other qualified specialists are considered acceptable medical sources. See 20 C.F.R. § 404.1502. Chiropractors are not acceptable medical sources. Id. In her Reply, Plaintiff argues that chiropractors are "other medical sources" under 20 C.F.R. § 404.1513. However, this language is only present in the version of the regulation effective until March 27, 2017. Compare 20 C.F.R. § 404.1513 (effective September 3, 2013 to March 26, 2017), with 20 C.F.R. § 404.1513 (effective March 27, 2017).[4] Regardless, the Court notes that under the prior version of regulation, an ALJ was only required to give germane reasons to discredit a chiropractor's opinion. See, e.g., Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (discussing the prior version of the regulation).

In March of this year, the Ninth Circuit issued an opinion overruling the line of cases requiring "germane reasons" for rejecting this type of evidence. See Hudnall v. Dudek, 130 F.4th 668, 669 (9th Cir. 2025). That opinion was subsequently vacated and withdrawn. See Hudnall v. Dudek, 133 F.4th 968 (9th Cir. 2025). On May 13, 2025, the Ninth Circuit issued a new opinion explicitly declining to address the issue of whether the germane reasons standard has been overruled by the revised regulations. Hudnall v. Dudek, No. 23-3727, 2025 WL 1379101, at *2 (9th Cir. May 13, 2025) ("In light of those revised regulations, the Government argues, our court's precedent requiring that an ALJ give a 'germane reason[]' for rejecting lay testimony should be overruled . . . We need not decide whether those regulations constitute 'intervening higher authority' that is 'clearly irreconcilable' with our precedent.").

Regardless, the Court notes that even assuming the "germane reasons"

---

[4] The comments to the revised regulations show that the Social Security Administration specifically declined to include chiropractors as other medical sources. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5846-47 (Jan. 18, 2017).

standard applies, the ALJ did provide germane reasons for discounting the chiropractors' opinions. "The 'germane reasons' requirement is not onerous" and in rejecting the chiropractors' opinions, the ALJ did not need to "follow the same rules that apply to medical sources." Id. at *3 (Graber, concurring). Rather, in rejecting the chiropractors' opinions, it was "sufficient for the ALJ to state, for example, that 'the [chiropractors] were not credible,'" or that the ALJ found "medical testimony more persuasive." Id. Here, the ALJ found that the chiropractors' notes "provide[d] little probative value," because they failed to "note any objective exam findings or articulate function-by-function assessment of the claimant's workplace limitations." (Dkt. 6-3 at 30-31 ("Manfre still failed to provide a scintilla of clinical evidence in support of his opinion. He merely claimed [that Plaintiff] had restricted ranges of motion before articulating [Plaintiff's] treatment plan and her more recent diagnosis.").) Accordingly, the ALJ's treatment of the chiropractors' opinions does not merit remand.

### 3. The ALJ Was Not Required To Evaluate Dr. Singh's Letter As A Medical Opinion.

Under a 20 C.F.R. § 404.1513(a)(2), a "medical opinion" is a "statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in various work-related functional areas. 20 C.F.R. § 404.1513(a)(2). Plaintiff points to a letter from August of 2019 in which Plaintiff argues that Dr. Singh opined that a 2010 CT exam proved that Plaintiff's ankylosing spondylitis diagnosis went back to 2010. (Dkt. 12 at 17 (citing Dkt. 6-8 at 361).) The entirety of Dr. Singh's "opinion" in that letter is excerpted below:

> "Ms. Ortiz has evidence of sacroiliitis noted initially on a CT scan of the abdomen and pelvis in 2015. This finding would be consistent with the diagnosis of ankylosing spondylitis, however the official diagnosis was not made until 2019 at the time she became my patient. The finding on the CT

scan in 2010 suggests that the diagnosis of ankylosing spondylitis goes back to 2010. Ankylosing spondylitis is an inflammatory arthritis of the spine which typically presents his chronic back pain before the age of 45. He [*sic*] can be associated with one or more articular and periarticular extraspinal features including synovitis, enthesitis, dactylitis. Multiple joints can be involved. Patients can also have uveitis, psoriasis or inflammatory bowel disease (ulcerative colitis or Crohn's disease)."

(Dkt. 6-8 at 361.)

The ALJ did not find Dr. Singh's "opinion" persuasive because: (1) Dr. Singh did not treat Plaintiff in 2010 or prior to the date last insured; (2) Dr. Singh did not have firsthand knowledge of Plaintiff's condition prior to December 31, 2013; and (3) Dr. Singh based this opinion entirely on one imaging scan, without sufficient, objective, or longitudinal treatment evidence. (Dkt. 6-3 at 31.)

Defendant is correct in arguing that this letter does not amount to a medical opinion under 20 C.F.R. § 404.1513(a)(2). The letter does not contain a statement regarding what Plaintiff can still do despite her impairment. (Dkt. 6-8 at 361.) The letter also does not address whether Plaintiff had one or more impairment-related limitations or restrictions during the relevant period through December 13, 2013, the date last insured. (Id.) Rather, the letter appears to speculate that "[t]he finding on the CT scan in 2010 *suggests* that the diagnosis of ankylosing spondylitis goes back to 2010." (Dkt. 6-3 at 31) (emphasis added). Dr. Singh then provides what appears to be general information regarding the course of illness for ankylosing spondylitis, rather than as to Plaintiff specifically. (See Dkt. 6-8 at 361.) Accordingly, the one paragraph letter cited by Plaintiff does not amount to a medical opinion under the applicable regulations, and therefore the ALJ's consideration of the letter was not improper.

**4.** **The Court Finds No Error Regarding The ALJ's Treatment Of Dr. Geneve's Opinion.**

In cases where the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83–20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998); DeClements v. Astrue, 365 F. App'x 842, 843 (9th Cir. 2010) ("We cannot determine from this record the date DeClements became disabled . . .Under similar circumstances, we have interpreted Social Security Regulation 83–20 to require that the ALJ may not draw medical inferences alone but must call upon the services of a medical advisor to review the medical record and determine the correct onset date.").

Here, the date of Plaintiff's ankylosing spondylitis was uncertain and therefore, the ALJ called medical advisor Dr. Nickerson Geneve as a witness to review Plaintiff's objective medical evidence.  (See Dkt 6-3 at 43-56.)  Plaintiff contends that the ALJ "failed to acknowledge the consistencies between Dr. Singh's opinion and the testimony of Dr. Geneve," "failed to acknowledge that Dr. Geneve testified that he did not have any specific experience with rheumatology," and failed to acknowledge that Dr. Geneve did not have the opportunity to review Dr. Singh's opinion letter.  (Dkt. 12 at 17-18.)

The Court concludes that the ALJ sufficiently evaluated Dr. Geneve's opinion using the most important factors, supportability and consistency.  See Cross, 89 F.4th at 1213.  First, the ALJ found Dr. Geneve's opinion "supported by the minimal treatment record during the insured period, which established few clinical findings, normal motor strength, intact sensation, negative straight leg raises, and mild degenerative lumbar changes."  (Dkt. 6-3 at 32.)  Further, the ALJ found Dr. Geneve's opinion consistent "with the absence of follow-up treatment or any consistent medical treatment for many years following the insured period,"

1  consistent with Plaintiff's reporting that her pain came and went, and consistent with

2  Plaintiff's testimony that she was able to care for a young child.  (Id.)

3      Plaintiff cites no caselaw to support the argument that the ALJ committed

4  legal error by failing "to acknowledge that Dr. Geneve testified that he did not have

5  any specific experience with rheumatology."  (Dkt. 12 at 18.)  To the contrary, the

6  Court notes that once an ALJ has addressed the supportability and consistency

7  factors, the ALJ "may discuss other factors, such as the medical source's

8  'relationship with the claimant' or 'specialization,' *but generally has no obligation

9  to do so*."  Cross, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)); see also 20

10  C.F.R. § 404.1520c(b)(2) ("We may*, but are not required to*, explain how we

11  considered the factors in paragraphs (c)(3) through (c)(5) of this section, as

12  appropriate." (emphasis added)).  Thus, the Court finds no basis for remand with

13  respect to the ALJ's evaluation of Dr. Geneve's testimony.[5]

14  **B.  The New Evidence Submitted To The Appeals Council Does Not Render

15      The ALJ's Decision Unsupported By Substantial Evidence.**

16      In her second ground for relief, Plaintiff argues that new and material

17  evidence, considered and rejected by the Appeals Council, renders the ALJ decision

18  unsupported by substantial evidence.  (Dkt. 12 at 19-20.)  Specifically, Plaintiff

19

20  ─────────────────

21      [5] Plaintiff also makes cursory mention of the fact that the ALJ found the
    opinions of state agency physicians Ross and Sin partially persuasive, but "did not
22  address the factors of consistency or supportability in making this finding as
    required by 20 CFR § 404.1520c."  (Dkt. 12 at 18.)  However, Plaintiff does not
23  argue that this finding was harmful.  In the absence of any such argument, the Court
    declines to supply one.  Further, the Court finds that any error in evaluating the
24  opinions of the state agency physicians was harmless because Plaintiff failed to
    supply "sufficient, objective evidence to support the existence, let alone the severity,
25  of [an ankylosing spondylosis diagnosis] prior to the date last insured."  (Dkt. 6-3 at
    26.)  Accordingly, any error in evaluating the state agency physicians' opinions was
26  harmless.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he
    court will not reverse an ALJ's decision for harmless error, which exists when it is
27  clear from the record that the ALJ's error was inconsequential to the ultimate
    nondisability determination.").
28

12

1  asserts that a "retrospective" medical opinion from Dr. Singh renders the ALJ's

2  opinion unsupported by substantial evidence.  (Id.)

3      **1.**    <u>**Legal Standard.**</u>

4      A party seeking a remand for consideration of additional evidence under 42

5  U.S.C. § 405(g) must demonstrate that (1) the evidence is material, and (2) there

6  was good cause for the failure to incorporate the evidence into the record during the

7  prior proceeding.  <u>See</u> 42 U.S.C. § 405(g); <u>Bruton v. Massanari</u>, 268 F.3d 824, 827

8  (9th Cir. 2001).  However, the "new and material evidence" standard in section

9  405(g) "applies only to new evidence that is not part of the administrative record

10  and is presented in the first instance to the district court."  <u>Brewes v. Comm'r of</u>

11  <u>Social Sec. Admin.</u>, 682 F.3d 1157, 1164 (9th Cir. 2012) (emphasis added).

12  "[E]vidence submitted to and considered by the Appeals Council is not new but

13  rather is part of the administrative record properly before the district court."  <u>Id.</u>

14  The district court must therefore consider such evidence "in determining whether

15  the Commissioner's decision is supported by substantial evidence."  <u>Id.</u> at 1160.

16      **2.**    <u>**Dr. Singh's Retrospective Opinion.**</u>

17      After the ALJ's unfavorable decision, Plaintiff submitted a "retrospective"

18  medical opinion from Dr. Singh to the Appeals Council.  (Dkt. 6-3 at 16-19.)  The

19  Appeals Council considered this evidence and made it a part of the Administrative

20  Record.  (<u>Id.</u> at 2-5).  However, the Appeals Council determined that the

21  retrospective opinion would not change the outcome of the ALJ's decision.  (<u>Id.</u> at

22  2-5.)  In his "retrospective" opinion, Dr. Singh opined that Plaintiff had ankylosing

23  spondylitis, and that Plaintiff had a demonstrated history of back, hip, or neck pain

24  consistent with ankylosing spondylitis as of December 31, 2013.  (<u>Id.</u> at 17.)  When

25  asked if Plaintiff's early signs of ankylosing spondylitis were present prior to

26  December 31, 2013, Dr. Singh checked the box stating "Yes," but then wrote

27  "unknown to me for sure because I didn't meet [Plaintiff] until 2019 . . . patient

28  states yes."  (<u>Id.</u>)  When asked if Plaintiff had ankylosing spondylitis bowel

symptoms prior to December 31, 2013, Dr. Singh again checked "Yes," but then wrote "unknown to me for sure since I didn't meet her until 2019 . . . patient states yes." (Id.)  When asked about ankylosing spondylitis symptoms including eye pain, blurred, vision, sensitivity to light, and rib pain and whether these symptoms were present prior to December 31, 2023, Dr. Singh declined to answer yes or no but wrote "per PCP notes 2010."  (Id.)

When asked to indicate, based on her best medical opinion, "the beginning of [Plaintiff's] ankylosing spondylitis," Dr. Singh wrote "2015 is when CT scan shows concrete evidence . . . so prior to 2015."  (Id.)  Further, Dr. Singh wrote "I see changes in 2015 – unclear how long prior it began."  (Id.)  When asked whether, in her medical opinion, whether the pain of Plaintiff's ankylosing spondylitis would cause Plaintiff to miss work some days per month prior to December 31, 2023, Dr. Singh wrote "unknown to me."  (Id. at 18.)  When asked how long, based on Plaintiff's history and medical records, did Plaintiff experience periods of intense pain prior to December 31, 2013, Dr. Singh wrote "unknown to me as I began seeing her in 2019."  (Id.)  When asked how long, based on Plaintiff's history and medical records, would Plaintiff have needed to shift positions from sitting to standing and or walking prior to December 31, 2023, Dr. Singh stated "unknown to me."  (Id. at 19.)  When asked to indicate, based on Plaintiff's history and review of Plaintiff's medical records, what Plaintiff's capacity to sit at one time, stand at one time, walk at one time, sit cumulatively in an 8-hour day, stand cumulatively in an 8-hour day, and walk cumulatively in an 8-hour day, Dr. Singh wrote that she "[could not] answer these questions."  (Id.)  When asked when she believed Plaintiff's ankylosing spondylitis was present, Dr. Singh wrote "back pain reported to PCP Dr. Alam 12/30/2010."

### 3.  Analysis.

The Ninth Circuit has explained that medical evidence "submitted to the Appeals Council does not affect the ALJ's disability determination and does not

14

warrant remand" if "the new evidence post-dates the period under review, is not retroactive to that period, and therefore would not reasonably affect the ALJ's decision." Petersen v. Berryhill, 737 F. App'x 329, 332 (9th Cir. 2018). Here, Dr. Singh seemed distinctly unwilling to opine about Plaintiff's condition prior to December 31, 2013 in her "retrospective" opinion. (See, e.g., Dkt 6-3 at 17 ("unknown to me for sure because I didn't meet [Plaintiff] until 2019 . . . patient states yes"); id. ("I see changes in 2015 – unclear how long prior it began"); id. at 18 ("unknown to me as I began seeing her in 2019").) When Dr. Singh did opine about the date Plaintiff's ankylosing spondylosis began, she refused to definitively state that it began prior to Plaintiff's date last insured. (Id.)

Accordingly, the Court concludes that remand is not warranted based on Dr. Sign's retrospective opinion because the new evidence post-dates the period under review, the evidence is distinctly non-retroactive in nature, and nothing in the new evidence would reasonably affect the ALJ's decision.

**C.    The ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony.**

In Plaintiff's third ground for relief, Plaintiff asserts that the ALJ "failed to identify any specific inconsistencies between Plaintiff's testimony and the medical evidence." (Dkt. 12 at 24.) Further, Plaintiff argues that the ALJ failed to provide analysis to explain the rejection of Plaintiff's testimony. (Id.) Finally, Plaintiff contends that the ALJ failed to identify the specific testimony which the ALJ found not credible or explain what evidence undermined that testimony. (Id.)

**1.    Legal Standard.**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. See Garrison, 759 F.3d at 1014. "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the

symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (internal quotation marks omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. See Trevizo, 871 F.3d at 678; see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal quotation marks omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. See Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional

restrictions caused by the claimant's symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284; <u>accord</u> <u>Burrell</u>, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." <u>Tommasetti</u>, 533 F.3d at 1039; <u>see</u> <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." (internal quotation marks omitted))." The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." <u>Brown-Hunter</u>, 806 F.3d at 493. Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

## 2.    <u>Plaintiff's Subjective Symptom Testimony.</u>

Plaintiff testified that prior to giving birth in December of 2013, she experienced back pain and struggled to complete daily activities. (Dkt. 6-3 at 59-60.) Plaintiff testified that she was unable to kneel to bathe her child or play with her child on the floor, and could not bend to put her child in a crib. (<u>Id.</u>) Plaintiff also testified that her pain prevented her from shopping, and that therefore she would give her older children money to make purchases while she waited in the car. (<u>Id.</u> at 60.) Plaintiff testified that she was able to drive locally. (<u>Id.</u> at 63.) Plaintiff was able to lift her child, but had trouble bending over. (<u>Id.</u>) Plaintiff testified that she was unable to sit all day due to orthopedic pain. (<u>Id.</u> at 63-63.) Plaintiff treated her pain with Epson salt baths, ice packs, and Ibuprofen. (<u>Id.</u> at 69.)

### 3. **Analysis.**

After considering the evidence, the ALJ found that Plaintiff's "medically

determinable impairments could reasonably be expected to cause the alleged

symptoms; however, the [Plaintiff's] statements concerning the intensity,

persistence and limiting effects of these symptoms [were] not entirely consistent

with the medical evidence and other evidence in the record for the reasons explained

in [the ALJ's] decision." (Id. at 29.)  Thus, because the ALJ determined that there

was medical evidence of an impairment that could reasonably produce the

symptoms Plaintiff alleged, and because the ALJ did not make a finding of

malingering, the ALJ was required to provide specific, clear and convincing reasons

for rejecting Plaintiff's subjective symptom testimony.  See Trevizo, 871 F.3d at

678.

The ALJ considered Plaintiff's testimony regarding disabling pain, but

discounted this testimony based on inconsistencies with the objective medical

evidence, Plaintiff's inadequately explained failure to seek treatment, and Plaintiff's

history of conservative treatment, when treatment was obtained.  (Id. at 29-31.)

Specifically, the ALJ cited objective medical evidence that undermined Plaintiff's

allegations of disabling pain including an October 2009 x-ray revealing

straightening of the normal cervical lordosis but otherwise unremarkable soft tissues

of the neck, (id. at 29 (citing Dkt. 6-8 at 216)); an August 2010 abdominal and

pelvic CT scan showing mild asymmetric soft tissue attenuation in the posterior

aspect of the left ischiorectal fossa suggesting infectious or inflammatory process

but otherwise unremarkable findings, (Dkt. 6-3 at 29-30 (citing Dkt. 6-8 at 5-6));

and an office note from chiropractor Robert Sprunt stating Plaintiff could return to

work in November 2010, (Dkt. 6-3 at 30 (citing Dkt. 6-8 at 2)).  The ALJ also cited

records from Facey Medical Group in December 2010 which stated that Plaintiff

experienced "on and off" back pain; that her neurological exam was within normal

limits; that she had no spinal tenderness or paraspinal muscle spasms; that her

reflexes were normal, and that her strength and sensation were normal.  (Dkt. 6-3 at 30 (citing Dkt. 6-8 at 352).)  Additionally, the ALJ cited a January 2011 MRI of the lumbar spine which found a minimal diffuse posterior disk bulge at the L4-5 and L5-S1 levels with minimal facet hypertrophy in the lower lumbosacral spine, and otherwise normal findings.  (Dkt. 6-3 at 30 (citing Dkt. 6-8 at 3-4).)

In addition to the inconsistencies between Plaintiff's subjective complaints of disabling pain and the objective medical evidence, the ALJ cited to Plaintiff's unexplained lack of treatment.  (Dkt. 6-3 at 30.)  In particular, the ALJ noted that "[t]here were no records of follow-up treatment in 2011, 2012, or 2013," nor did Plaintiff supply records of "any supporting, objective clinical evidence through the date last insured."  (Id.)  Further, the ALJ noted that when Plaintiff did seek treatment for her allegedly disabling pain, it was conservative treatment, including chiropractic care and Advil PM.  (Id. (citing Dkt. 6-8 at 352 "Patient is not interested in any medications.").)  Finally, the ALJ noted that prior to December 31, 2013, Plaintiff testified that her daily activities included caring for a young child.  (Id. at 31.)

Plaintiff argues that the ALJ "failed to provide analysis to explain [her] rejection of [Plaintiff's] testimony."  (Dkt. 12 at 24.)  Specifically, Plaintiff contends that the ALJ "failed to identify the specific testimony which the ALJ found not credible or explain what evidence undermined the testimony."  (Id. at 24-25 (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)).)  Plaintiff argues that the ALJ committed legal error because the ALJ's reasoning for rejecting Plaintiff's subjective symptom testimony must be "inferred."  (Dkt. 12 at 25.)  The Court has reviewed the ALJ's reasoning for rejecting Plaintiff's subjective symptom complaints and finds no such error.

In evaluating subjective symptom testimony, the ALJ was permitted to consider inconsistencies between Plaintiff's testimony and the objective medical evidence, Plaintiff's unexplained or inadequately explained failure to seek

1  treatment, and Plaintiff's daily activities prior to the date last insured.  Ghanim, 763

2  F.3d at 1163; Burrell, 775 F.3d at 1137.  The ALJ considered those factors here.

3  Further, the Court finds that the ALJ provided a detailed analysis of how

4  inconsistencies with the objective medical evidence, long gaps in Plaintiff's

5  treatment history, a conservative course of treatment, and Plaintiff's daily activities

6  prior to the date last insured, all undermined Plaintiff's subjective complaints of

7  disabling pain, particularly disabling back pain.  (Dkt. 6-3 at 29-30.)  These amount

8  to specific, clear and convincing reasons for rejecting Plaintiff's subjective

9  complaints.  See Trevizo, 871 F.3d at 678.  Thus, the Court finds no basis for

10  remand in the ALJ's rejection of Plaintiff's subjective symptom testimony.

11  **D.**    **The ALJ Did Not Err In Formulating The RFC.**

12         In Plaintiff's fourth and final ground for relief, Plaintiff contends that the ALJ

13  erred in formulating the RFC because the ALJ's RFC assessment is inconsistent

14  with the opinion of chiropractor Manfre.  (Dkt. 12 at 25.)  Further, Plaintiff argues

15  that the ALJ erred by failing to account for Plaintiff's chronic pain "documented in

16  Dr. Singh's records which Dr. Singh opined existed prior to 2013."  (Id. at 25-26

17  (citing Dkt. 6-8 at 334, 361).)  As explained above, chiropractor Manfre's opinion is

18  not a medical opinion and therefore the ALJ did not err in formulating an RFC

19  which is purportedly inconsistent with chiropractor Manfre's non-medical opinion.

20  The Court has examined the two pages of the record cited by Plaintiff in support of

21  her argument that the ALJ erred by failing to account for Plaintiff's chronic pain as

22  "documented in Dr. Singh's records which Dr. Singh opined existed prior to 2013."

23  (Id.)

24         One of the records cited by Plaintiff in support of this contention is Dr.

25  Singh's "retrospective" opinion which the Court has already found speculative, and

26  hardly shows that Plaintiff suffered from chronic pain prior to 2013.  (See Dkt. 6-8

27  at 361.)  The Court has reviewed the one other page cited by Plaintiff in support of

28  this argument, which is a progress note from April 24, 2019.  (Dkt. 6-8 at 334.)  The

Court finds no evidence in this progress note to support the existence of Plaintiff's chronic pain existing prior to 2013. Accordingly, Plaintiff's arguments regarding the ALJ's formulation of the RFC are without merit and the ALJ's RFC formulation does not warrant remand.

## VII.

## ORDER

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 21, 2025                    _____

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

21